UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,

v.

**Brett Alan BRINTON, Defendant–Appellant–Cross–Appellee.**

Nos. 96–50173, 96–50258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided March 19, 1998.

Michael D. Abzug and Denise Meyer, Los Angeles, California, for defendant–appellant.

Thomas D. Warren, Miriam A. Krinsky, and Peter Spivak, U.S. Atty's, Los Angeles, California, for plaintiff–appellee.

Before: HALL and T.G. NELSON, Circuit Judges, and WINMILL,* District Judge.

T.G. NELSON, Circuit Judge:

Brett Brinton appeals and the United States cross-appeals Brinton's sentence for several methamphetamine-related convictions. Brinton challenges the district court's ruling that it could not reduce his sentence under U.S.S.G. § 5C1.2 (the "safety valve provision") because the court was foreclosed by the jury verdict from reconsidering the amount of drugs involved. The United States challenges the district court's thirty-month downward departure from the sentencing guidelines range for Brinton's offense level, based on Brinton's incarceration in state and local facilities.

Because the district court erred with respect to several aspects of Brinton's sentence, the sentence is vacated, and the case is remanded to the district court for resentencing consistent with this opinion.

## I.

In February 1989, Brett Brinton and his brother, William, contacted the RSA Corporation of New York, seeking advice on how to improve their production rates of a chemical known as desoxyn. RSA initially agreed to help, but upon discovering that desoxyn was another term for methamphetamine, they wisely declined further assistance. The Brintons, however, were not deterred.

On March 6, 1989, police responded to an explosion at an industrial complex leased by the Brinton brothers in San Bernardino, California. Both were at the scene when the police arrived. Police searched the area and found fifteen pounds of ephedrine (a precursor chemical that can be used to manufacture methamphetamine), 25 pounds of a mixture containing detectable amounts of methamphetamine (2,401 grams of which was in "processed" form), a small amount of pure methamphetamine, chemical glassware, and other laboratory equipment consistent with the operation of a methamphetamine lab on the premises.

The next day, police obtained a search warrant for Brett Brinton's residence, as well as a storage locker he leased. In the residence police found 43.25 grams of methamphetamine, an explosive device, and a videotape of the brothers manufacturing a substance that appeared to be methamphetamine. In the storage locker, police found 1,300 pounds of ephedrine along with additional laboratory glassware.

A federal grand jury subsequently returned an eight-count indictment charging the brothers with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846 ("count one"); endangering human life while manufacturing methamphetamine, in violation of 21 U.S.C. § 858 ("count two"); manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) ("count three"); possession of twenty-five pounds of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) ("count four"); manufacture of an explosive without a license, in violation of 18 U.S.C. § 842 ("count five"); possession of 43.25 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) ("count six"); and possession of 1,300 pounds of ephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d) ("count seven"). Count eight of the indictment referred only to William Brinton.

In August 1990, a jury returned a general verdict convicting Brett Brinton ("Brinton") of counts one through four and count seven. The jury also convicted Brinton under count six, but only of the lesser included offense of simple possession.

At the December 1990 sentencing hearing, the district court expressly disregarded the sentencing guidelines and sentenced Brinton to the mandatory minimum of 120 months. Brinton appealed his conviction, and the Government appealed the sentence. In January 1993, this court affirmed the conviction and reversed the sentence. *United States v.*

* Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

*Brinton,* Nos. 90–50488, 90–50489, 91–50043, 91–50045.

The first resentencing hearing was held in April 1994. This time, the district court departed downward from the guidelines based on Brinton's post-arrest rehabilitation, again sentencing Brinton to 120 months. The Government appealed, and this court once again reversed the sentence. *United States v. Brinton,* Nos. 94–50244, 94–50246, 94–50258, 94–50261.

A second resentencing hearing was held in March 1996. At this hearing, Brinton objected to the presentence report ("PSR"). In particular, Brinton objected to the PSR's calculation of the quantity of methamphetamine seized from the industrial complex. Responding to this objection, the district court stated its belief that the jury verdict precluded it from reconsidering the quantity of methamphetamine involved and accepted the PSR's determination. The district court also rejected Brinton's objections to the PSR's conversion of ephedrine to methamphetamine for purposes of calculating his sentence under U.S.S.G. § 2D1.1. Finally, the district court held that because of the quantity of controlled substances and precursor chemicals involved, the safety valve provisions of U.S.S.G. § 5C1.2 did not apply.

Nonetheless, the district court departed downward from the guidelines yet again, this time based primarily on Brinton's incarceration for two and one-half months in a state facility following his arrest, sentencing Brinton to 121 months.

Brinton filed a timely appeal challenging the district court's refusal to reconsider the PSR's calculation of the quantity of drugs involved, thus preventing application of the safety valve. The Government cross-appealed the district court's downward departure from the guidelines sentence.

## II.

This appeal presents two primary issues: (A) whether the district court correctly calculated Brinton's sentence, properly determining that the safety valve was unavailable to him; and (B) whether the thirty-month downward departure from the guidelines constituted an abuse of discretion.

### A. *Calculation of Brinton's Sentence and Availability of the Safety Valve*

Brinton was convicted of two violations of 21 U.S.C. § 841 (as well as a conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846, which is treated the same way), each carrying with it a mandatory minimum sentence of ten years imprisonment. 21 U.S.C. § 841(b). However, 18 U.S.C. § 3553(f), found in the sentencing guidelines at U.S.S.G. § 5C1.2, set up a safety valve provision which instructs the sentencing judge to disregard the mandatory minimum if the court finds the defendant has met all five of the listed criteria. Brinton contends that he has met these requirements, and therefore, the safety valve should apply.

Regardless of whether a defendant has met the listed criteria, the safety valve can only provide relief if the defendant's guidelines offense level would otherwise result in a sentencing range below the statutory minimum. Therefore, we must calculate Brinton's offense level without regard to the statutory minimum in order to determine whether the safety valve can provide Brinton any relief.

#### 1. *Calculating Brinton's offense level.*

Because Brinton's convictions on counts one, two, three, four, and seven involve the same victim (societal interest), are connected by a common scheme or plan, and carry offense levels primarily determined according to the aggregate amount of the drugs involved, the sentencing guidelines require the offenses to be grouped. U.S.S.G. § 3D1.2(b), (d). The guidelines instruct that "the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two...." U.S.S.G. § 3D1.3(b). If the counts involve offenses of the same general type, but to which different guidelines apply, the sentencing judge is instructed to "apply the offense guideline that produces the highest offense level." *Id.*

Brinton's convictions pursuant to count seven (possession of ephedrine with the intent to manufacture methamphetamine), and count two (endangering human life while manufacturing methamphetamine), carry with them a *maximum* sentence of ten years. 21 U.S.C. § 841(d); 21 U.S.C. § 858. Brinton's other convictions pursuant to count one (conspiracy to manufacture methamphetamine), count three (manufacture of methamphetamine), and count four (possession of methamphetamine with the intent to distribute), each mandate a *minimum* sentence of ten years and allow for a maximum sentence of life imprisonment. 21 U.S.C. §§ 841(b), 846 (stating that sentencing on the conspiracy count should be subject to the same penalties as those prescribed for the offense). Therefore, since the convictions on counts one, three, and four have the potential to produce the highest offense level, the group offense level should be determined under the guideline applicable to those offenses.

■ Sentencing on Brinton's § 841 counts proceeds under U.S.S.G. § 2D1.1. Under this section, the offense level depends, in large part, on the type and amount of drugs involved. U.S.S.G. § 2D1.1(c). The quantity of drugs seized is a finding of fact to be made by the district judge at sentencing. *United States v. Sotelo–Rivera*, 931 F.2d 1317, 1319 (9th Cir.1991). Therefore, we must evaluate the sentencing judge's determinations of the quantity of drugs seized, as those findings are a prerequisite to a proper determination of Brinton's guidelines offense level.

### a. *The 2,401 gram mixture.*

Brinton argues that the 2,401 grams of material (the "processed" portion of the 25–pound mixture seized from the industrial complex), necessarily found by the jury to contain at least *some* amount of methamphetamine, should not be counted in calculating the offense level because the mixture was nothing more than unmarketable waste product. At the sentencing hearing, Brinton presented a declaration from a chemist stating that the methamphetamine content of samples· from the mixture was only 15–32%, and that the material was unmarketable and probably too dangerous for human consump-

tion. The PSR, pursuant to a Government report, argued that the mixture was 50% methamphetamine. The district court adopted the PSR's 50% methamphetamine figure, believing the drug quantities were necessarily determined by the jury verdict.

### (1) *Marketability is not an element of the offense.*

■ Brinton's argument that the methamphetamine in the mixture could not be counted, due to its unmarketability, is simply incorrect. The marketability of the methamphetamine is not an element of the crime. The applicable sentencing guidelines refer to "any mixture of a compound [that] contains *any detectable amount* of a controlled substance." U.S.S.G. § 2D1.1, comment. (n.1) (1988) (emphasis added). The mixture in this case averaged at least 15% methamphetamine-certainly a detectable amount. The fact that the mixture was unmarketable due to toxic contaminants does not require that the *entire* mixture be ignored for sentencing purposes. *See United States v. Innie*, 7 F.3d 840, 845 (9th Cir. 1993) ("*Innie I*"); *United States v. Beltran–Felix*, 934 F.2d 1075, 1076 (9th Cir.1991).

### (2) *Percentage of mixture used in determining sentence.*

Previously, we have used the entire weight of a mixture to determine the appropriate sentence. *See Innie I*, 7 F.3d at 845; *Beltran–Felix*, 934 F.2d at 1076. However, in 1993, application note 1 to U.S.S.G. § 2D1.1 was amended to further define "mixture or substance." Under the 1993 amendment, "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1, comment. (n.1) (1995). We have held that the 1993 amendment to U.S.S.G. § 2D1.1 merely clarified the existing guideline rule and so applies retroactively. *United States v. Innie*, 77 F.3d 1207, 1209 (9th Cir.1996) ("*Innie II*").

■ If the sentencing court finds that the material seized was in a distributable form, the entire weight counts at sentencing. If,

however, the material required further processing prior to distribution, only the weight of the pure drug is included. *Id.* (applying the 1993 amendment to U.S.S.G. § 2D1.1 and ruling that only the average of the mixture that was usable methamphetamine should be used in calculating defendant's sentence).

The Supreme Court's holdings in *Neal v. United States,* 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996), and *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), are not to the contrary. Both *Neal* and *Chapman* dealt with LSD and whether the weight of the blotter paper used to hold the drug should be included in the weight used at sentencing. Both cases held that it should, but noted that LSD is normally distributed after dilution by some form of inert carrier. The law was designed to punish on the basis of the amount of drug distributed, rather than the amount of pure drug. *Neal,* 516 U.S. at 288–90, 116 S.Ct. at 766; *Chapman,* 500 U.S. at 461, 111 S.Ct. at 1925. Additionally, *Chapman* observed that the guidelines treat methamphetamine differently from LSD. *Chapman,* 500 U.S. at 459, 111 S.Ct. at 1924. Therefore, *Chapman* and *Neal* do not require that the entire weight of the mixture be used in establishing the sentence in Brinton's case.

### (3) *District court's adoption of the 50% figure.*

■ The district court specifically adopted the 50% figure set forth in the PSR-a sufficient method of making the requisite factual findings. *See United States v. Upshaw,* 918 F.2d 789, 792 (9th Cir.1990). However, Brinton argues that this unsupported adoption of this figure was clearly erroneous. To support this position, Brinton relies on *United States v. Simmons,* 964 F.2d 763 (8th Cir.1992), which held that the district court could not rest its drug quantity determination on the basis of testimony that lacked sufficient indicia of reliability.

This argument fails. The 50% figure in the PSR was based on information obtained by the probation officer from the California Department of Justice laboratory expert assigned to the case. The court additionally had before it the declaration of the Government's expert stating that the material was 50% methamphetamine. Thus, the information came from a state laboratory expert and so had the required indicia of reliability.

■ However, it is clear from the record that the district court adopted the PSR's finding that the material was 50% methamphetamine because it erroneously believed that the jury's verdict precluded it from considering the amounts involved. Quantity is not an element of the offense of possession with intent to distribute-it becomes important only at sentencing. *See Sotelo–Rivera,* 931 F.2d at 1319 ("Section 841(a) does not specify drug quantity as an element of the substantive offense of possession with intent to distribute; quantity is instead relevant to the penalty provisions of section 841(b), and is a matter for the district court at sentencing.").

Because the jury returned a general verdict, it was not required to accept the amount of drugs contained in the indictment. It only needed to find that Brinton possessed *some* methamphetamine with intent to distribute. Thus, the district court erred when it held that it could not consider the quantity of methamphetamine involved at sentencing. Upon remand, the sentencing judge must make a finding as to the amount of the 2,401 gram mixture attributable to pure methamphetamine.

### b. *Conversion of ephedrine to methamphetamine.*

■ Brinton also contests the court's adoption of the PSR's conversion of ephedrine, a precursor chemical which is not included in the drug equivalency tables, to methamphetamine, a listed drug, in order to aggregate the chemicals for grouping purposes. As a preliminary matter, Brinton argues that the sentencing judge failed to recognize that because the maximum sentence for possession of ephedrine is ten years, using the ephedrine to arrive at a higher sentence is not permitted.

Although § 841(d) carries a ten-year maximum, this does not mean that the court cannot sentence Brinton to greater than ten years under another section. The failure of

the district court to cap the sentence *under* § *841(d)* was error. However, the 841(d) sentence runs concurrently with Brinton's sentences on the other counts, and the other counts do not carry with them a ten-year maximum sentence. Therefore, if otherwise appropriate, the court may utilize the grouping section of the guidelines to arrive at a higher sentence under another one of Brinton's convictions, such as § 841(a), which would permit a higher sentence.

### (1) *Statutory basis for the conversion.*

In order to determine whether conversion was appropriate, we must identify the statutory basis for that conversion. The sentencing guidelines provide a "Drug Equivalency Table" as "a means for combining differing controlled substances to obtain a single offense level." U.S.S.G. § 2D1.1, comment. (n.10). The table equates different types of drugs to marijuana in order to arrive at a unified offense level. However, ephedrine is an ingredient, not a drug, and is not listed in the table. Therefore, the conversion from ephedrine to methamphetamine must take place pursuant to some other authority.

That authority is found in U.S.S.G. § 2D1.1, application note 12 ("note 12"). *See* U.S.S.G. § 2D1.11, comment. (n.3) (providing grouping instructions for related convictions involving controlled substances and listed precursor chemicals, and directing courts to consider the quantity of both the controlled substance and the listed chemical to determine the scope of the offense pursuant to application note 12 of § 2D1.1). Note 12 authorizes the sentencing court to consider "[t]ypes and quantities of drugs not specified in the count of conviction." U.S.S.G. § 2D1.1, comment (n.12). It goes on to say that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *Id.*

Proceeding under the conspiracy to manufacture methamphetamine count, the sentencing judge could determine that the amount of ephedrine seized evidenced a capacity to manufacture methamphetamine at a higher rate than reflected by the amount of methamphetamine seized and "approximate the quantity of the controlled substance" by converting the ephedrine into methamphetamine. U.S.S.G. § 2D1.1, comment. (n.12). However, as discussed below, this is not what happened.

### (2) *District court's failure to make findings regarding the conversion.*

It seems apparent that the quantity of methamphetamine seized from Brinton did not adequately represent the quantity of methamphetamine that *could* have been produced from the conspiracy to manufacture methamphetamine. *See United States v. Aichele,* 941 F.2d 761, 766 (9th Cir.1991). The 1,300 pounds of ephedrine that Brinton possessed could have been used to manufacture between 198,828 grams (using the 3–to–1 conversion ratio suggested by Brinton) and 589,680 grams (using the 1–to–1 conversion ratio urged by the government) of methamphetamine. The discrepancy between these quantities and the 2,401 gram methamphetamine mixture actually seized from Brinton is marked, to say the least.

Unfortunately, the district court made no express or implied findings with respect to conversion and apparently believed that conversion was required by the sentencing guidelines irrespective of Brinton's intent or ability to convert all 1,300 pounds of ephedrine to methamphetamine. Moreover, the district court selected a 2–to–1 conversion ratio based upon the erroneous belief that the jury had determined the methamphetamine content of Brinton's output. Because the district court misconstrued the law in making its factual determination of the quantity of drugs involved, we must vacate Brinton's sentence and remand for resentencing.

We do not mean to suggest that a sentencing court must make highly detailed findings regarding the intent or the ability of a defendant to convert precursor chemicals to controlled substances before it can consider the precursor chemicals in calculating the defendant's sentence under § 2D1.1. However, where the sentencing court completely abdicates its role in determining whether conversion is proper and what conversion ratio should be used, the defendant's sentence cannot stand.

### (3) *Ex post facto.*

██ Brinton suggests that the conversion of ephedrine to methamphetamine would violate the Ex Post Facto Clause of the United States Constitution. This argument clearly fails. As discussed above, the statutes and guidelines in effect at the time of the offense gave adequate authority to convert the ephedrine. Further, we have previously approved the conversion of ephedrine to methamphetamine for sentencing purposes under the 1988 guidelines. *United States v. Bertrand,* 926 F.2d 838, 845 (9th Cir.1991). No ex post facto problem exists.

### 2. *Availability of the safety valve.*

The district court did not reach the safety valve provision of U.S.S.G. § 5C1.2 because the 2,401 gram sample resulted in a guidelines sentence above the mandatory minimum. If the district court determines upon resentencing that the aggregate quantities of drugs involved result in a guidelines sentence above the mandatory minimum, the "safety valve" cannot come into play. If, however, the guidelines sentence falls below the mandatory minimum, the district court should consider the factors enunciated in § 5C1.2 to determine whether the "safety valve" authorizes imposition of a sentence below the mandatory minimum.

### B. *Thirty–Month Downward Departure*

After adopting the offense level of 36, as advocated in the PSR, the sentencing judge instituted a sentence of 121 months, a thirty-month downward departure from the guidelines range for that offense level. In so doing, he cited the conditions under which Brinton was held prior to his transfer to a federal facility. This factor is not mentioned in the sentencing guidelines. In such cases, the Supreme Court has set forth the procedure to be followed:

> [T]he court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (citation omitted).

Here, the district court failed to explain why Brinton's incarceration in non-federal institutions was so unusual as to take the case outside the guidelines' heartland. A downward departure of thirty months, on the basis of two and one-half months in state custody, does not comport with the structure and theory of the guidelines as a whole. We ultimately need not decide whether the district court abused its discretion because the government waived its challenge to the downward departure by failing to object below, *see United States v. Castaneda,* 94 F.3d 592, 594 n. 4 (9th Cir.1996), and Brinton's sentence must be vacated regardless. Nonetheless, the district court may wish to carefully consider the propriety of such a departure when it resentences Brinton.

### CONCLUSION

The sentence is VACATED and the case is REMANDED to the district court for resentencing.

The district court should first determine whether the 2,401 gram mixture was capable of being distributed in the condition in which it was seized. If the district court answers this question in the affirmative, it should consider the entire weight of the material in determining Brinton's offense level. If the district court finds that the mixture was not marketable, it should determine what portion of the mixture was methamphetamine and use this amount to calculate Brinton's sentence.

The district court should also determine, consistent with this opinion, whether and at what ratio the ephedrine seized from Brinton should be converted to methamphetamine for purposes of determining Brinton's offense level under U.S.S.G. § 2D1.1.

Only if the guidelines sentence falls below the mandatory minimum sentence should the

district court proceed to evaluate the applicability of the § 5C1.2 "safety valve."

VACATED AND REMANDED.