# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 97-3669SD

————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Dominic L. Miller, | * | |
| | * | |
| Appellee. | * | |

————————

Submitted: February 10, 1998
Filed: August 11, 1998

————————

Before FAGG and MURPHY, Circuit Judges, and SMITH,[*] District Judge.

————————

FAGG, Circuit Judge.

The Government appeals the district court's order suppressing drug-related evidence seized from Dominic L. Miller's efficiency apartment at Bridgeway Treatment Facility, a halfway house for adults with severe, persistent mental illnesses. We reverse and remand.

————————

[*]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, sitting by designation.

The relevant facts are neither complicated nor disputed. Miller's mental illness was controlled by medications, which were centrally dispensed. If Bridgeway residents failed to show up for their morning medications, staff members would go to their apartments and rouse them. Because these severely ill persons posed some risk of danger to themselves and others, staff members also had access to the facility's apartments by way of a master key. One Saturday morning, Lorie Fischer, the weekend supervisor, knocked at Miller's door. Miller was away for the weekend--residents were generally free to come and go as they pleased--but Fischer had forgotten that fact. Receiving no reply, Fischer unlocked Miller's door and called his name. She then remembered he was gone, but at the same time she smelled cigarette smoke. Bridgeway has a strict no-smoking rule, so Fischer stepped inside to investigate. She saw cigarette butts, ashes, matches--and evidence of drug activity in plain view. This, too, was against Bridgeway's rules. After looking around, Fischer relocked the apartment and called the medical services head, who called Bridgeway's director and told him what Fischer had seen. The next day, Fischer entered Miller's apartment again with the weekday supervisor, Stephanie Weidemann, who also observed the drug evidence. Later that day, the director had the locks on Miller's door changed to keep Miller from altering the scene. On Monday, the director called the police and admitted them into Miller's room. The officers saw what Fischer and Weidemann had seen, and nothing more. The officers then obtained a search warrant and seized the drug-related items. Miller's prosecution followed in due course.

Miller moved to suppress the seized items, challenging the officers' first, warrantless entry on Fourth Amendment grounds. The Government countered that the entry was lawful because the director consented to it. For a third-party consent to a warrantless police search to be legally effective, the consenting party must have actual or apparent authority to give the consent. See United States v. Matlock, 415 U.S. 164, 171 & n.7 (1974) (actual authority); Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990) (apparent authority). Concluding the director possessed neither, the district court granted Miller's motion. On appeal, both the Government and Miller continue to treat

this as a third-party consent case.  After de novo review, see United States v. Leyva-Serrano, 127 F.3d 1280, 1282 (10th Cir. 1997); see also United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997), we conclude otherwise.  Because the proper resolution of this matter is beyond doubt, we exercise our discretion to decide the Government's appeal on a different ground altogether.  See Washington Gas Light Co. v. Virginia Elec. & Power Co., 438 F.2d 248, 251 (4th Cir. 1971) ("[I]f deemed necessary to reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party."); see also United States Dep't of Labor v. Rapid Robert's Inc., 130 F.3d 345, 348 (8th Cir. 1997).

The Fourth Amendment prohibits unreasonable searches and seizures.  Absent some well-settled exception, unconsented warrantless searches are unreasonable.  See United States v. Boettger, 71 F.3d 1410, 1413 (8th Cir. 1995).  Before reaching the issue of whether the director's consent rendered the warrantless police intrusion lawful, however, the preliminary question is whether a Fourth Amendment search has taken place at all.  The Constitution does not apply to searches, reasonable or otherwise, by private individuals, so long as the private party is "'not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984) (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).  Further, to be a Fourth Amendment search, a governmental intrusion must infringe on a legitimate expectation of privacy.  See id.  Because a private search frustrates such an expectation, see id. at 117-18, an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes, see id. at 120.  Thus, in a private search case, the legality of later governmental intrusions "must be tested by the degree to which they exceeded the scope of the private search." Id. at 115.  Our cases following Jacobsen are to the same effect.  See, e.g., United States v. Rouse, No. 98-1705, 1998 WL 381725, at *2 (8th Cir. July 10, 1998); United States v. Mithun, 933 F.2d 631, 634 (8th Cir. 1991).

The application of <u>Jacobsen</u>'s private search rule here is as straightforward as the rule itself. There is no question Fischer and Weidemann intended to act in a wholly private capacity when they entered Miller's apartment, and the police neither knew about nor acquiesced in their entry. See <u>United States v. Parker</u>, 32 F.3d 395, 398-99 (8th Cir. 1994). The police first became involved the day after the joint search by Fischer and Weidemann, and the police intrusion went no further than theirs. See <u>Mithun</u>, 933 F.2d at 634. Thus, no Fourth Amendment search occurred at all, so the drug-related evidence in this case was lawfully obtained.

Before concluding, we take note of a recent opinion issued by the Fifth Circuit, <u>United States v. Paige</u>, 136 F.3d 1012 (5th Cir. 1998). Like our case, which involves the search of an apartment, <u>Paige</u> concerns a police intrusion into residential property-- specifically, a detached garage--in the wake of a private search. <u>Jacobsen</u>, by contrast, dealt with the search of a package, and "it was virtually certain that [the package] contained nothing but contraband." <u>Jacobsen</u>, 466 U.S. at 120 n.17. Emphasizing this point, and observing that "people's homes contain countless personal, noncontraband possessions," the Fifth Circuit declined "to extend <u>Jacobsen</u>'s holding 'to cases involving private searches of residences.'" <u>Paige</u>, 136 F.3d at 1020 n.11 (quoting <u>United States v. Allen</u>, 106 F.3d 695, 699 (6th Cir.) (deciding search issue on grounds unrelated to <u>Jacobsen</u>'s private search rule), <u>cert. denied</u>, 117 S. Ct. 2467 (1997)). The Fifth Circuit did not reject <u>Jacobsen</u>, however. Drawing on pre-<u>Jacobsen</u> circuit precedent, <u>United States v. Bomengo</u>, 580 F.2d 173, 175-76 (5th Cir. 1978) (involving private search of apartment), <u>cert. denied</u>, 439 U.S. 1117 (1979), the Fifth Circuit tailored the <u>Jacobsen</u> rule to accommodate the court's concerns when a police search follows a private party search of a home. In this situation, the Fifth Circuit held, a police search within the scope of an earlier private search is lawful only when "the private party's intrusion was reasonably foreseeable." <u>Paige</u>, 136 F.3d at 1020. We neither adopt nor reject the Fifth Circuit's rule because the police search in this case would pass muster under both <u>Jacobsen</u> and <u>Paige</u>. It was reasonably foreseeable that the on-duty supervisor of Miller's treatment facility might forget Miller was out of

-4-

town, open his door when he did not respond to his morning medication call, step inside his apartment to investigate when she detected a violation of house rules, and see the drug-related items left in open sight.

We reverse the district court's order and remand for further proceedings not inconsistent with this opinion.

MURPHY, Circuit Judge, concurring.

I concur in the result reached by the court because Lorie Fischer's entry into Mr. Miller's room in the halfway house was reasonably foreseeable to him. See United States v. Paige, 136 F.3d 1012, 1020 (5th Cir. 1998). We have not previously applied the Jacobsen private search rule to an individual's residence, see United States v. Rouse, No. 98-1705, 1998 WL 381725 (8th Cir., July 10, 1998) (package); United States v. Mithun, 933 F.2d 631, 634 (8th Cir. 1991) (automobile), but the facts of this case make its application here appropriate. Since the home has long been afforded heightened protection against invasions of privacy, see California v. Carney, 471 U.S. 386, 390 (1985); Paige, 135 F.3d at 1021 n.11, I would not extend the Jacobsen rule beyond circumstances where an intrusion by a private actor into a residence was reasonably foreseeable to the owner or tenant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.