In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1177

United States of America,

Plaintiff-Appellee,

v.

Stephen D. Lamb,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-30064-WDS--William D. Stiehl, Judge.

Argued January 25, 2000--Decided March 10, 2000

Before Eschbach, Coffey, and Easterbrook,
Circuit Judges.

Easterbrook, Circuit Judge.  Woefully
equipped for his line of work, Stephen
Lamb broke into a bank. All he had was a
screwdriver, a pair of wire cutters, and
a crowbar. They sufficed to damage the
vault's handle and locking mechanism,
which only made entry harder. Lamb
managed to stuff $350 from two coin
vaults into a bag before being caught
when police answered the burglar alarm,
which Lamb had failed to disable.
Sentencing is the only subject presented
on appeal.

Section 2B2.1 of the Sentencing
Guidelines provides the framework for
bank burglaries. The base offense level
is 12, and a table in sec.2B2.1(b)(2)
provides for increases if the loss
exceeds $2,500. Section 2B2.1 is not
self-contained but refers to the
commentary of sec.2B1.1 for all issues of
valuation. According to sec.2B1.1
Application Note 2, "loss" means "the
value of the property taken, damaged, or
destroyed." Lamb concedes that everything
in his bag was "taken" even though he did
not get away. He also concedes that the
$1,500 spent to repair property he

damaged counts as loss. The court ordered Lamb to pay restitution of $1,519.28, and he does not contest this part of the sentence. Nor does he contest a two-level increase for obstruction of justice, reflecting the fact that he skipped bond shortly before trial.

As Lamb sees things, the total loss was less than $2,000, so the table in sec.2B2.1(b)(2) does not come into play. But the district judge calculated loss at $215,000: the sum of the property damage, the contents of the main vault (about $200,000), the contents of the coin vaults Lamb pried open, and money in a storage compartment near the coin vaults. This produced a three-level increase under sec.2B2.1(b)(2)(D) (loss between $50,000 and $250,000). Lamb contends that he could not have opened the main vault; he did open the coin vaults and might have obtained access to the storage compartment, but counting all of this (plus the physical harm) as "loss" would have put him in the $10,000 to $50,000 bracket, for a two-level increase under sec.2B2.1(b) (2)(C). Because Lamb received only one month less than the highest permissible sentence under the range the district court calculated, the difference between two levels under sec.2B2.1(b)(2)(C) and three under sec.2B2.1(b)(2)(D) matters to the sentence. Lamb has a criminal history category of III. If the district court is right that his final offense level is 17, then the sentencing range is 30 to 37 months; but if Lamb is right, and the offense level cannot exceed 16, then the range is only 27 to 33 months, and his sentence must be reduced by at least three months. And if "loss" properly calculated is under $2,500, then the final offense level is 14, and the sentencing range is 21 to 27 months.

The district judge concluded that Lamb "intended" to steal everything he could lay his hands on. Lamb does not deny having this goal but argued in the district court, and again here, that he could not have opened the main vault using only a screwdriver, a pair of wire cutters, and a crowbar. That much the prosecutor concedes. What the district judge concluded is that intent is all that matters; ability to carry out one's plan is irrelevant. Lamb asks us to follow United States v. Galbraith, 20

F.3d 1054, 1059 (10th Cir. 1994), and United States v. Khan, 969 F.2d 218, 220 (6th Cir. 1992), by holding that impossibility defeats criminal intent for sentencing purposes; the prosecutor replies that United States v. Coffman, 94 F.3d 330, 336-37 (7th Cir. 1996), and United States v. Stockheimer, 157 F.3d 1082, 1089-90 (7th Cir. 1998), commit this court to a different approach, under which objective indicators of impossibility do not matter to sentencing. We need not resolve that dis pute, because Galbraith, Khan, Coffman, and Stockheimer all are fraud cases under sec.2F1.1, not theft cases. Application Note 8 to sec.2F1.1 observes that valuation issues in fraud cases frequently differ from valuation issues in theft cases. We think it best to stick to the approach the Guidelines prescribe for thefts rather than to jump headlong into the proper treatment of frauds. Accord, United States v. Kopp, 951 F.2d 521, 528 (3d Cir. 1991).

Application Note 2 to sec.2B1.1, which defines "loss" in theft cases, starts but does not end with the proposition that loss is "the value of the property taken, damaged, or destroyed" (here, about $2,000). Five paragraphs later, Application Note 2 has a proviso that applies to Lamb:

In the case of a partially completed offense (e.g., an offense involving a completed theft that is part of a larger, attempted theft), the offense level is to be determined in accordance with the provisions of sec.2X1.1 (Attempt, Solicitation, or Conspiracy) whether the conviction is for the substantive offense, the inchoate offense (attempt, solicitation, or conspiracy), or both; see Application Note 4 in the Commentary to sec.2X1.1.

Lamb took $350 but tried to purloin much more, so off we go to sec.2X1.1. The principal rule is stated in sec.2X1.1(a):

The base offense level [comes] from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

This tells us that "any intended offense conduct that can be established with reasonable certainty" counts as "loss" for purposes of sec.2B2.1, the guideline for the substantive offense. Although the district judge did not use the words "reasonable certainty" when finding that Lamb intended to steal the contents of the main vault, there has been no dispute about that subject; Lamb's counsel agrees that Lamb intended to empty the vault, if he could. Thus as a first approximation the "loss" was $215,000 and the offense level 17, just as the district court held.

But the Sentencing Commission recognized that inchoate offenses are less serious than completed ones. Section 2X1.1(b)(1) reads:

If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

Having added extra levels under sec.2X1.1(a), the court must subtract three levels under sec.2X1.1(b)(1), unless the defendant completed all of the acts he thought necessary to success, or he was about to complete them when caught. See United States v. Kim Tae Sung, 51 F.3d 92 (7th Cir. 1995), after remand, 87 F.3d 194 (7th Cir. 1996). Application Note 4 explains the operation of sec.2X1.1 as a whole:

In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count (or group of closely related multiple counts) is whichever of the following is greater: the offense level for the intended offense minus 3 levels (under sec.2X1.1(b)(1), (b)(2), or (b)(3)(A)), or the offense level for

the part of the offense for which the necessary acts were completed (or about to be completed but for apprehension or interruption). For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

This illustration speaks directly to Lamb's theft--though here the numbers are $215,000 and $2,000 rather than $800,000 and $30,000. Lamb set out to steal $215,000 but completed only those acts needed to steal a much smaller amount. Thus "the offense level is the offense level for the theft of [$215,000] minus 3 levels, or the offense level for the theft of [$2,000], whichever is greater." The offense level for a loss of $215,000 is 15 - 3 = 12; the offense level for a loss of $2,000 is 12; thus the inchoate portion of Lamb's offense doesn't matter. Add two levels for obstruction of justice, and the final offense level is 14.

No one spelled out for the district judge's benefit how sec.2X1.1(b)(1) works, and it is hard to blame the judge for not subtracting three levels on his own. But the application of this guideline is straightforward and has a direct effect on Lamb's sentence, so we deem the oversight plain error. United States v. Olano, 507 U.S. 725 (1993). Lamb's sentence must be recalculated. Two issues on remand will be how much money was in the coin vaults, and whether Lamb was about to open the storage compartment. Neither of these mattered given the district judge's decision to count the $200,000 in the main vault, but they do matter under sec.2X1.1. If the coin vaults contained more than $1,000 in total, or if Lamb would have gained entry to the storage area but for the arrival of the police, then he is accountable for more than $2,500 of loss and his final offense level is 15 or 16 (depending on just how much was in the vaults and compartment); otherwise it is 14.

Vacated and Remanded