# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3411

_____

United States of America,

        Appellee,

v.

Donald Keith Kroeger,

        Appellant.

Appeal from the United States
District Court for the
Northern District of Iowa.

[PUBLISHED]

_____

Submitted: April 14, 2000
Filed: October 13, 2000

_____

Before BOWMAN, MAGILL, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

While responding to a fire at Donald Keith Kroeger's residence, authorities discovered a methamphetamine laboratory. After a jury trial, Kroeger was convicted of manufacturing and attempting to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and endangering human life while doing so, in violation of 21 U.S.C. §§ 841(a)(1) and 858. The district court sentenced him to concurrent terms of 240 months imprisonment and 5 years supervised release on the manufacturing count, and 120 months imprisonment and 3 years supervised release on the endangering-life count. Kroeger appeals his sentence, and we reverse for the reasons discussed below.

# I

The presentence report (PSR) grouped the counts because they were closely related, and determined the group's offense level on the basis of the endangering-life count because it was the more serious count. Applying U.S.S.G. § 2D1.10(a)(1), the PSR calculated a base offense level of 35 by adding 3 to the level 32 specified in the drug-quantity table, U.S.S.G. § 2D1.1(c)(4), for the 225.2 grams of methamphetamine Kroeger possessed and was capable of producing. The PSR then applied a 2-level enhancement under U.S.S.G. § 2D1.1(b)(5) because the offense involved the unlawful discharge, emission, or release into the environment of hazardous or toxic substances, or the unlawful transportation, treatment, storage, or disposal of hazardous waste. The defendant was sentenced to 240 months of confinement which was near the midpoint of the 210- to 262-month range for a level 37, criminal history category I offender.

Kroeger objected to using the endangering-life count to set the offense level for the group, arguing that the group's offense level should be set by the manufacturing count because that count carried a greater maximum prison term. He also objected to the application of the environmental-harm enhancement, contending that it constituted double-counting and was unsupported by the facts. The district court overruled these objections.

On appeal, Kroeger renews his arguments that the manufacturing count should have set the offense level for the group and that the environmental-harm enhancement should not have been applied. Although the government responds that these arguments lack merit, it discloses a possible reason--not raised below or on appeal by Kroeger–why the environmental-harm enhancement should not have been applied. We focus on this issue.

II

The base offense level for the endangering-life count was correctly calculated under section 2D1.10(a)(1) by adding 3 to the offense level established by the drug-quantity table in section 2D1.1. See United States v. Loos, 165 F.3d 504, 506-07 (7th Cir. 1998), cert. denied, 525 U.S. 1169 (1999). The environmental-harm enhancement found in section 2D1.1(b)(5) should not have been applied, however, because section 2D1.10(a)(1) directs only that the drug-quantity table be used and does not refer to the rest of section 2D1.1. An instruction to use a particular table from another offense Guideline refers only to the table, not to the entire offense Guideline, see U.S.S.G. § 1B1.5(b)(2), and this applies specifically to section 2D1.10(a)(1)'s reference to the drug-quantity table, see id., comment. (n.1).

Kroeger's failure to raise this argument below or on appeal does not prevent us from considering it. See United States v. Miller, 152 F.3d 813, 815 (8th Cir. 1998). When a district court errs, the error is clear under current law, and the error affects the defendant's substantial rights, we may exercise our discretion to remedy the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. See United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc).

In light of the Guidelines provisions explored above, we are persuaded that the district court erred and that the error was clear under current law (i.e., the Guidelines themselves). We are aware of no case law interpreting section 1B1.5(b)(2) differently. See, e.g., United States v. Laihben, 167 F.3d 1364, 1366 n.2 (11th Cir.), cert. denied,. denied, 527 U.S. 1029 (1999); United States v. Cho, 136 F.3d 982, 984 (5th Cir. 1998). We also conclude that the error affected Kroeger's substantial rights: when the environmental-harm enhancement to the endangering-life count is removed, the offense level is reduced from 37 to 35, and the resulting Guidelines imprisonment range is reduced from 210-262 months to 168-210 months. Kroeger's 240-month sentence thus exceeds the maximum Guidelines sentence by 30 months. See United States v.

Comstock, 154 F.3d 845, 850 (8th Cir. 1998) (defendant's "substantial rights were clearly affected because, as he was sentenced, he would end up serving 17 more months in prison than he might have served had he been sentenced absent the error").

Finally, we deem it appropriate to exercise our discretionary reversal power in these circumstances. See id. (reversing because 17-month sentencing error seriously affected fairness of sentencing proceedings); United States v. Marsanico, 61 F.3d 666, 668 (8th Cir. 1995) (reversing because not correcting 21-month sentencing error would result in miscarriage of justice). While it is understandable that the district court overlooked this issue--neither the parties nor the probation officer who prepared the PSR brought it to the court's attention--justice requires that Kroeger be resentenced under a correct application of the Guidelines. See United States v. Lamb, 207 F.3d 1006, 1009 (7th Cir. 2000) ("No one spelled out for the district judge's benefit how [this guideline] works, and it is hard to blame the judge for not [applying it] on his own. But the application of this guideline is straightforward and has a direct effect on [the defendant's] sentence, so we deem the oversight plain error.").

III

In view of our decision to reverse and remand the case on the basis that the environmental-harm enhancement was misapplied, we need not reach Kroeger's arguments that its application constituted impermissible double-counting and was factually unsupported. See United States v. Brown, 33 F.3d 1002, 1005 (8th Cir. 1994). We do reach his argument regarding which count should set the offense level for the group, however, and find it to be without merit.

Kroeger argues that the group's offense level should be set by the manufacturing count because it carries a greater maximum term of imprisonment (life) than does the endangering-life count (10 years). See 21 U.S.C. §§ 841(b)(1)(A)(viii) and 858. He relies exclusively on United States v. Brinton, 139 F.3d 718 (9th Cir. 1998), in which

the defendant was convicted of a variety of charges, including the same type of manufacturing and endangering-life offenses present in the instant case. The Ninth Circuit held that, in grouping the counts, the offense level for the group should be set by the manufacturing count because it carried the greater statutory maximum sentence and thus had "the potential to produce the highest offense level." See id. at 722.

We reject Kroeger's argument, and the Ninth Circuit's approach, because both rest on an erroneous understanding of the Guidelines. When counts are grouped, the "most serious" of the grouped counts sets the offense level for the group. But the most serious count is not the count with the greatest available maximum statutory term of imprisonment; it is the count with the highest offense level. See U.S.S.G. § 3D1.3(a) (most serious count is one with "the highest offense level of the counts in the Group") & comment. (n.2) (when counts are grouped, "the highest offense level of the counts in the group is used"); United States v. Whatley, 133 F.3d 601, 607 (8th Cir.) (when counts are grouped, count with highest offense level sets offense level for group), cert. denied, 524 U.S. 940, 945 (1998); United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995) (same).

In concluding that the count with the greatest statutory maximum sentence had the potential to produce the highest offense level, the Brinton court went astray: the statutory maximum may cap the Guidelines imprisonment range, but it has no effect on the offense level. The Ninth Circuit's analysis also overlooked the fact that when a defendant is sentenced on multiple counts, the statutory maximum for any one count does not cap the total punishment he can receive. See U.S.S.G. § 5G1.2 & comment.; United States v. Ervasti, 201 F.3d 1029, 1045-46 (8th Cir. 2000).

The district court correctly concluded that the endangering-life count was the more serious of the grouped counts and correctly used it to set the offense level for the group. Even after subtracting the environmental-harm enhancement from the

-5-

endangering-life count's offense calculations, that count remains the more serious count and sets the group's offense level.[1]

## IV

For the reasons set forth above, we reverse the sentence imposed by the district court, and we remand for resentencing consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]We express no opinion as to whether the environmental-harm enhancement could be applied to the manufacturing count, because the issue is not before us. We merely note that it would not change the most-serious-count analysis because, if the enhancement were applied, the manufacturing count's offense level would be 34, which is still less than the endangering-life count's offense level of 35.