**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-5202

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

ALEJANDRO VILLAREAL,

              Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.   Robert   J.
Conrad, Jr., Chief District Judge.   (3:07-cr-00195-RJC-4)

Submitted:  October 26, 2009        Decided:  November 6, 2009

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

F. Lane Williamson, GARLITZ & WILLIAMSON, P.L.L.C., Charlotte,
North Carolina, for Appellant.   Edward R. Ryan, Acting United
States Attorney, Mark A. Jones, Assistant United States
Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Alejandro Villareal was convicted by a jury of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 846 (2006) (Count One), and conspiracy to commit money laundering, 18 U.S.C. § 1956(h) (2006) (Count Two), and was sentenced to a term of 360 months imprisonment. He appeals his sentence, arguing that the district court clearly erred in finding that he was a manager or supervisor in the conspiracy, U.S. Sentencing Guidelines Manual § 3B1.1(b) (2008), and erred in calculating his offense level under USSG § 3D1.3(a). We affirm.

The evidence produced at trial established that Villareal was involved in a conspiracy that transported large amounts of cocaine from Mexico into the Rio Grande Valley area in Texas and then in tractor-trailer trucks to North Carolina, Florida, Georgia, New York and Texas for distribution. Large amount of currency — drug proceeds — were also transported regularly. Eduardo Saenz oversaw operations in Charlotte, North Carolina, and Villareal, his long-time friend, assisted him. As part of apparent counter-surveillance efforts, the conspirators made a practice of switching vehicles frequently while transporting drugs or money. Because they were in fact under surveillance for much of the year before Villareal's arrest, many such vehicle-swaps were witnessed by law enforcement

2

agents. At Villareal's trial, Yomil Prado and Jesus Balderas testified that they made trips to destinations in North Carolina and South Carolina under the direction of both Saenz and Villareal during which vehicles were switched. They were usually paid $2000 per trip, and received the money sometimes from Saenz and sometimes from Villareal. On some trips, both Saenz and Villareal were present, but frequently only Villareal made the trip with them.

Under USSG § 3B1.1(b), a three-level enhancement applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Under Application Note 2 to § 3B1.1, to qualify for the adjustment, a defendant must have managed or supervised "one or more other participants." An upward departure may be warranted if the defendant managed an organization's property, assets or activities. Id. The district court's factual finding concerning the defendant's role in the offense is reviewed for clear error. United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002). The court found that Villareal had a managerial position because he coordinated drivers, paid the drivers, handled large amounts of money, and acted independently of Saenz at times. We conclude that the district court did not clearly err in so finding.

3

Villareal's two counts of conviction were grouped together for sentencing purposes under USSG § 3D1.2(c). Under USSG § 3D1.3(a), when counts are grouped together pursuant to § 3D1.2(a)-(c), the offense level for the group is the offense level "for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." Accordingly, the district court determined that the adjusted offense level for the group was 43, the offense level for Count Two, the money laundering offense. The district court then varied downward to offense level 42.

Villareal contends on appeal that the district court misapplied § 3D1.3, which provides that, when counts are grouped together under § 3D1.2(c), the offense level for the group is the offense level for "the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." Villareal claims that "the most serious of the counts" should be taken to mean the count with the highest statutory maximum.

However, the guideline explicitly defines the term "the most serious of the counts comprising the group" as the count with the highest offense level. Villareal relies on United States v. Brinton, 139 F.3d 718 (9th Cir. 1998), as support for his interpretation, based on the appeals court's statement that "since the [manufacturing counts] have the

4

potential to produce the highest offense level, the group offense level should be determined under the guideline applicable to those offenses." Id. at 722. However, Brinton did not address the interpretation of § 3D1.3(a) that Villareal seeks to advance here. See United States v. Eversole, 487 F.3d 1024, 1032-33 (6th Cir. 2007) (the Brinton "court did not calculate the respective offense levels . . . nor did it explicitly hold that the 'seriousness' determination is controlled by the statutory maximum sentence"). Eversole went on to reject the interpretation of § 3D1.3(a) urged here by Villareal and the view that Brinton "tacitly" supported that view. Two other circuits have also rejected Villareal's interpretation of § 3D1.3(a). United States v. Kroeger, 229 F.3d 700, 703-04 (8th Cir. 2000) ("[T]he most serious count is not the count with the greatest available maximum statutory term of imprisonment; it is the count with the highest offense level"); United States v. Evans, 318 F.3d 1011, 1020 (10th Cir. 2003) (same). We find no error in the district court's calculation of Villareal's offense level. Because his claims of error are without merit, Villareal is not entitled to resentencing.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the

5

materials before the court and argument would not aid the decisional process.

AFFIRMED