UNITED STATES of America, Appellee,

v.

Daniel Joseph BOYER, Appellant.

No. 89–2907.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1990.

Decided Sept. 11, 1990.

Rehearing Denied Oct. 29, 1990.

E. Ann Wright, Kansas City, Mo., for appellant.

Mark A. Miller, Kansas City, Mo., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Daniel J. Boyer appeals his conviction for attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. We affirm.

## I.

On July 1, 1989, a Federal Express employee in Los Angeles, California, put a suspicious-looking parcel through an X-ray machine and then opened it. He discovered what he believed to be narcotics. He resealed the box, placed it in a blue security bag, and contacted the security office at the Federal Express regional headquarters in Memphis, Tennessee, to tell them he was sending a package. Memphis security office personnel opened the package, examined its contents, and weighed it. They then contacted the local Drug Enforcement Administration (DEA) office before resealing the package and sending it on to the Kansas City Federal Express office.

The Federal Express office in Kansas City turned the package over to DEA Agent Carl Hicks without opening it. When Hicks opened the package, he found wadded newspaper, coffee grounds, and a large plastic bag with approximately two pounds of brown material inside it. He removed the substance from the box, tested it, and found it to be methamphetamine. After placing a small amount of the methamphetamine and a counterfeit substance inside the box, he resealed the package.

Posing as a Federal Express delivery employee, Hicks went to the address indicated on the package and stationed several other law enforcement officers around the residence. Boyer answered the door, accepted the package, and signed for it before going back inside. After waiting a few minutes, Hicks returned to the residence and used a loud speaker to order Boyer to come outside. Boyer and another individual emerged. The officers arrested Boyer and advised him of his Miranda rights.

Boyer agreed to answer some questions. He then answered a question, refused to answer another, and said that he wanted to talk to an attorney before he would make a tape-recorded telephone call to the person that had sent him the package. Hicks asked to search the trailer, and Boyer signed a form consenting to the search. When Hicks asked him about the air bill that accompanied the package, Boyer said he had flushed it down the toilet.

Boyer was indicted for knowingly and intentionally attempting to possess with intent to distribute methamphetamine. The jury found Boyer guilty and the district court[1] sentenced him to 120 months' imprisonment and a special assessment.

## II.

■ Boyer challenges the district court's refusal to suppress evidence obtained from the government's warrantless search of the Federal Express package, claiming that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures. Although Boyer concedes that the search and seizure of property by private individuals without any governmental involvement is not subject to the dictates of the Fourth Amendment exclusionary rule, he essentially contends that once a package previously opened by a private party has been resealed before it is turned over to the government, as in this case, the government may not duplicate the private search without a warrant.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

The Supreme Court held in *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), that government seizure of an opened parcel containing a white powder Federal Express employees had discovered was not unreasonable. *Id.* at 120, 104 S.Ct. at 1660. The Court also held reasonable the government's chemical testing of the white powder, which proved that the substance was cocaine. *Id.* at 125, 104 S.Ct. at 1662. The government contends here that the technical distinction of whether or not a package previously searched by a private party is left open or resealed before the private party turns it over to law enforcement authorities does not prevent *Jacobsen* from governing Boyer's case.

We agree. Unlike *Jacobsen*, in this case Federal Express originally discovered the methamphetamine in a different city from where the package was to be delivered. Federal Express had to reseal the package before delivering it to Boyer. The Supreme Court expressly stated in *Jacobsen* that the case did not turn on "the fortuity of whether the Federal Express employees placed the tube back into the box." *Id.* at 120 n. 17, 104 S.Ct. at 1660 n. 17. Rather, the search was reasonable because after Federal Express employees' "examination of the package, their communication of what they had learned to the agent, and their offer to have the agent inspect it * * * the container could no longer support any expectation of privacy." *Id. Jacobsen's* holding is based upon the premise that the Fourth Amendment is not violated when a government agent "[views] what a private party * * * freely made available for his inspection," *id.* at 119, 104 S.Ct. at 1660, a holding that does not turn on whether the private party hands the package over to the government in a sealed or unsealed condition. Although the government "may not exceed the scope of the private search unless it has the right to make an independent search," *id.* at 116, 104 S.Ct. at 1658, no such broader search was conducted here. Thus, we find that the government's search and seizure of the package addressed to Boyer was reasonable.

 Boyer also asserts error in the district court's refusal to suppress statements he made to law enforcement after requesting an attorney, particularly his statement that he had flushed the air bill for the package. Viewing, as we must, the evidence in the light most favorable to the government, the record shows that Boyer only conditionally invoked his right to counsel. Boyer agreed to answer questions, proceeded to answer some questions and not others, and then said he would assist in making a tape-recorded telephone call to the person that had sent the package only after he had talked to an attorney. In *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the Supreme Court held that a limited invocation of the right to counsel does not preclude the admissibility of statements a defendant makes which fall outside the limited invocation. Here, the "ordinary meaning," *id.* 107 S.Ct. at 832, of Boyer's request for counsel applied only to making a tape-recorded telephone call. The statements Boyer made after requesting counsel for this purpose were outside of this context and therefore were admissible against him.

▆ Boyer also challenges the district court's instruction to the jury on determining the existence of intent to distribute a controlled substance. He claims that excess verbiage and misstatements of law alluded to factors for which there was no evidence in his case, prejudicing him in the eyes of the jury. We perceive no misstatement of the law in the instruction. Even if the instruction created the possibility of prejudice, the evidence of Boyer's guilt was substantial and rendered any error in the instruction harmless.

The district court's judgment is affirmed.