UNITED STATES of America, Appellee,

v.

**Eric Allen MOORE, Appellant.**

**No. 90–5329.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1991.

Decided Sept. 5, 1991.

James E. Ostgard, Minneapolis, Minn., for appellant.

Douglas R. Peterson, Minneapolis, Minn., argued (Jerome G. Arnold and Douglas R. Peterson, on brief), for appellee.

Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Eric Allen Moore appeals his conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). For reversal, Moore argues that the district court[1] erred in admitting evidence of the contents of a package, which was opened and then resealed by a Federal Express employee and later reopened by an agent of the Drug Enforcement Administration ("DEA") without a search warrant. Moore raises two alternate grounds in support of his claim that the evidence should have been suppressed; first, he argues that the opening of the package by the Federal Express employee amounted to a warrantless search encouraged by law enforcement authorities, and, second, he contends that the DEA agent's reopening of the package constituted a new search, which required a search warrant. For the reasons discussed below, we affirm the judgment of the district court.

I.

The following facts are based upon the testimony presented to the district court. On December 2, 1989, James Halbert, Operations Manager for Federal Express in Minneapolis, was informed that a microwave oven package appeared damaged.

---

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

Following company policy, he opened the package to inspect for damage to the contents and noticed an off-white substance through a knife-cut in a package inside, which he suspected to be a controlled substance. Pursuant to company policy, Halbert relayed the package to corporate security officers in Memphis, Tennessee, who in turn transferred the package to DEA agent Richard Ripley in Minnesota. On December 4, 1989, Halbert observed a vacuum cleaner box that was loosely packaged and took it to the re-wrap station. The box was addressed to a California address and the name "Michael Anderson" was listed as the shipper. When he opened the box he observed approximately twenty rolls of currency, one of which contained a number of fifty dollar bills. Halbert then contacted the DEA and resealed the package. Upon his arrival at the Minneapolis Federal Express office, DEA agent Ripley re-opened the vacuum cleaner box and found $30,020.00 in United States currency.

On the next day, law enforcement authorities arrested Tammy Allen at a Greyhound bus station and confiscated a duffel bag, which contained approximately three kilograms of crack cocaine. Allen agreed to cooperate with DEA agents to make a controlled delivery of the duffel bag to its intended recipient. Although Allen did not know the name of the intended recipient, she possessed a telephone number that she was supposed to call to get directions for delivering the bag. On December 7th, Allen arrived in Minnesota, dialed the telephone number and received directions to a motel where the delivery was to take place. In response to Allen's call, Moore, who was operating under the alias of Michael Anderson, arrived at the motel and was videotaped during his meeting with Allen, during which he was observed paying Allen $800.00, speaking on the telephone, and departing with the bag. Moore was then placed under arrest and initially identified himself as Anderson, but later admitted to his true identity. It was also determined

that the telephone number Allen called was registered to Moore.

Prior to trial, Moore filed a motion to suppress the evidence obtained as a result of Halbert's search of the vacuum cleaner box and the subsequent search by DEA agent Ripley. This motion was considered by the United States Magistrate Judge,[2] who, on February 22, 1990, recommended that it be denied. On April 3, 1990, the district court adopted the report and recommendation of the magistrate judge, and, among other things, denied Moore's motion to suppress the evidence obtained as a result of the search of the vacuum cleaner box. *United States v. Moore*, No. 3-89 Crim. 135 (D.Minn. Apr. 2, 1990). The district court found that Halbert's search of the vacuum cleaner box was private and, therefore, outside the reach of the fourth amendment, because it was conducted in accordance with Federal Express regulations and not as a result of governmental encouragement. The district court also found that, because DEA agent Ripley's search did not exceed the scope of the private search, his warrantless search was valid. Following a jury trial, Moore was convicted of possession with the intent to distribute three kilos of cocaine base and was sentenced to 300 months imprisonment without parole, to be followed by five years of supervised release, and a fifty dollar special assessment. This appeal followed.

II.

A. Private Search

■ Moore's first contention is that the district court clearly erred in finding that Halbert's search of the vacuum cleaner box was private and, therefore, beyond constitutional scrutiny. Moore argues that Halbert's search of the vacuum cleaner box constituted an unreasonable search, in violation of the constitution, because it was conducted with the encouragement of DEA agents. In essence, Moore claims that this encouragement transformed an otherwise private search into a government act,

2. The Honorable Franklin L. Noel, United States Magistrate Judge for the District of    Minnesota.

which implicates fourth amendment protections. Moore argues that the events leading to the discovery of money in the vacuum cleaner box indicate that Federal Express employees engaged in a group effort to obtain information about certain persons who regularly shipped packages,[3] and that this investigatory activity was conducted with the knowledge and approval of Federal Express managers, including the operations manager in the instant case, who consulted with DEA agents. Moore suggests that this evidence refutes the finding of the district court because it demonstrates that Halbert opened the vacuum cleaner package as a result of this investigatory activity, which was encouraged by the DEA, rather than his concern for the condition of the package. We disagree.

The district court based its finding, as did the magistrate judge, largely on the testimony of Halbert. This testimony indicates that Halbert opened the vacuum cleaner box due to his concern over the adequacy of the packaging, pursuant to standard Federal Express re-wrap procedures, and not as a result of encouragement from any law enforcement agency. In addition, although Halbert conceded that he was aware of certain suspicions on the part of certain Federal Express employees with respect to previous shipments of appliance packages through the Minneapolis office, he testified that his decision to open the vacuum cleaner box was unaffected by either the actions of these employees or by any investigatory authorization from the management of Federal Express. Finally, both Halbert and DEA agent Ripley testified that DEA agent Ripley never asked nor encouraged Halbert to search packages on behalf of the DEA.

Although Moore presented evidence to the district court in support of his claim that Halbert's search was encouraged by the DEA, given the testimony of Halbert and DEA agent Ripley, we cannot say that

the district court clearly erred in finding that Halbert's search of the vacuum cleaner box was private in character. According to Fed.R.Civ.P. 52(a), "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). However, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We are satisfied that the evidence, when viewed in its entirety and in light of this deferential standard, adequately supports the finding of the district court in the instant case.

■ We also note that Halbert's actions in opening the vacuum cleaner box would not raise constitutional concerns even if they were done as a result of curiosity or suspicions about the contents of the package. In *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984) (*Jacobsen*), the Supreme Court discussed the implications of a private search under facts similar to the instant case and stated: "Whether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the fourth amendment because of their private character."

---

**3.** Specifically, Moore claims that Federal Express employees in the Minneapolis office engaged in surveillance activities, which included noting the descriptions of "suspicious" customers, as well as their vehicles and license plates, and photocopying airbills relating to "suspi-

cious" appliance packages. Moore also claims that, given Halbert's participation in the search of the microwave oven package on December 2, 1989, he was aware of these suspicions, and this awareness contributed to his desire to search the vacuum cleaner box.

## B. Official Search

Moore next argues that, even if Halbert's action in opening the vacuum cleaner box was a private search, the subsequent opening of the resealed package by DEA agent Ripley, acting without a search warrant, violated his fourth amendment rights and, therefore, the fruit of this subsequent search must be suppressed. Moore notes that DEA agent Ripley took the resealed package back to his office and, after having it sniffed by dogs, opened it and removed all the contents. Moore argues that these facts distinguish the instant case from *Jacobsen* because, in that case, the Federal Express employees opened a damaged package and, upon discovering a white powdery substance, contacted drug agents who were presented with an open package. In essence, Moore argues that the *Jacobsen* holding is limited to situations in which government agents receive open packages containing contraband in "plain view." We disagree.

Moore's argument misinterprets the *Jacobsen* opinion. The *Jacobsen* decision was not predicated on a "plain view" analysis; on the contrary, the *Jacobsen* majority explicitly rejected such an interpretation. In discussing the scope of a DEA agent's search of a package previously opened by Federal Express employees, the Supreme Court noted:

> [I]n the context of [the employees'] previous examination of the package, their communication of what they had learned to the [DEA] agent, and their offer to have the agent inspect it, that act surely could not create any privacy interest with respect to the package that would not otherwise exist. Thus the precise character of the white powder's visibility to the naked eye is far less significant than the facts that the container could no longer support any expectation of privacy, and that it was virtually certain that it contained nothing but contraband.

466 U.S. at 120 n. 17, 104 S.Ct. at 1660 n. 17 (citations omitted). Instead, the *Jacobsen* holding is predicated on the principle that " 'the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him [or her] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed.' " *Id.* at 117, 104 S.Ct. at 1658 (quoting *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976)). Thus, under the *Jacobsen* holding, the legality of a subsequent government search is not dependent upon whether the private party conveys the package to a government agent in a sealed or unsealed condition, but rather, whether the government search exceeds the scope of the antecedent private search. *See Jacobsen*, 466 U.S. at 116, 104 S.Ct. at 1658.

In *United States v. Boyer*, 914 F.2d 144, 146 (8th Cir.1990) (*Boyer*), *cert. denied*, ――― U.S. ―――, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991), this court, under facts similar to the instant case, specifically held that government agents may duplicate a private search without a warrant, even though the package has been resealed before it was transferred to the agents. After addressing the *Jacobsen* decision, the *Boyer* court concluded that "the technical distinction of whether or not a package previously searched by a private party is left open or resealed before the private party turns it over to law enforcement authorities does not prevent *Jacobsen* from governing." 914 F.2d at 146; *see also United States v. Mithun*, 933 F.2d 631, 634 (8th Cir.1991) ("*Jacobsen* 'does not turn on whether the private party hands the package over to the government in a sealed or unsealed condition,' so long as the government's subsequent warrantless search does not 'exceed the scope of the [prior] private search.' ") (quoting *Boyer*, 914 F.2d at 146).

In light of the holdings in *Jacobsen* and *Boyer*, we agree with the district court that DEA agent Ripley's search of the vacuum cleaner box was valid. Given the fact that DEA agent Ripley's search of the package did not exceed the scope of Halbert's initial private search, a fact that Moore has not contested, we cannot say that the district court erred in denying Moore's motion to

suppress the evidence obtained as a res⁻lt of the government search.

## III.

In sum, we hold that the district court did not err in finding that Halbert's search of the vacuum cleaner box was private and, therefore, outside the purview of the fourth amendment; neither did it err in determining that DEA agent Ripley's subsequent search was constitutionally valid.

Accordingly, we affirm the judgment of the district court.