**UNITED STATES of America,
Plaintiff,**

v.

**David McINTYRE and Kathi
McIntyre, Defendants.**

**Case No. 8:09CR62.**

United States District Court,
D. Nebraska.

Feb. 4, 2010.

Nancy A. Svoboda, Assistant United States Attorney, Omaha, NE, for Plaintiff.

James K. McGough, McGough Law Firm, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

LAURIE SMITH CAMP, District Judge.

This matter is before the Court on the objections filed by the Defendant David McIntyre (Filing No. 78) and by the Defendant Kathi McIntyre (Filing No. 76) to the Magistrate Judge's: (1) oral order (Filing Nos. 61, 62) denying the Defendants' motion for reconsideration (Filing No. 59) of the Magistrate Judge's previous order (Filing No. 57) denying a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and (2) findings and recommendation (Filing No. 75) denying the motions to suppress (Filing Nos. 15, 34) filed by the Defendant, David McIntyre, and the mo-tion to suppress (Filing No. 56) filed by the Defendant, Kathi McIntyre.

## FACTUAL BACKGROUND

In his Memorandum and Order, Judge Thalken set out a detailed factual summary. Briefly, on December 8, 2008, Nebraska State Patrol ("NSP") Investigator Jason Sears and Nebraska State Trooper Lueders contacted the Defendant, David McIntyre ("McIntyre"), outside his Fremont, Nebraska, residence during their investigation of a missing person case. A person of interest sold a trailer to McIntyre that might have been used to dispose of a vehicle relating to the missing person case. While walking past a vehicle in the driveway, Investigator Sears noticed a pen tube in the ashtray, which he thought was a "tooter" used to ingest controlled substances. Inside the residence, Investigator Sears smelled a strong odor of raw marijuana and had an allergic reaction to the odor. McIntyre was nervous, and his hands shook. McIntyre said the trailer was loaded with wood and was at his cabin in Crofton, Nebraska, or at Mark Narke's residence. McIntyre called Narke and told him to get the trailer to Narke's residence in Santee, Nebraska, unload the wood, and have the trailer at Narke's residence before NSP officers arrived. On December 8, 2008, Investigator Sears and Trooper Lueders went to Narke's residence and saw nothing unusual.

On January 9, 2009, at approximately 7:00 a.m., Investigator Sears and Cedar County Sheriff Koranda drove past McIntyre's Crofton residence. They saw an Oldsmobile backed up to a garage. When they returned at 1:00 p.m. the Oldsmobile was gone. The officers got out of their car, and Investigator Sears saw a couple of unusual things when looking at the garage, including a hanging shingle as well as a small hose protruding from under the ga-

rage door. Investigator Sears smelled a strong odor of raw marijuana near the garage, and the smell caused him to suffer symptoms that he described as an allergic reaction. Investigator Sears ran McIntyre's record and found two prior drug-related arrests. Based on the instances of smelling raw marijuana and McIntyre's criminal history, Investigator Sears decided to obtain McIntyre's power usage records. A subpoena was needed for the Crofton records. NSP Investigator Douglas Kelley obtained a subpoena and received records for the Crofton property, which showed a huge spike in electrical usage for November 2008.[1] The general manager of the public power district told Investigator Sears that McIntyre's usage seemed higher than that of neighboring properties.

On January 14, 2009, a Knox County judge issued a thermal imaging warrant for McIntyre's Crofton residence after Investigator Kelley presented a search warrant affidavit referring to Investigator Sears's allergic reactions from smelling raw marijuana at both of McIntyre's residences, McIntyre's drug arrest history, the "tooter," and information regarding the use of thermal imaging in locating marijuana-growing operations. The warrant was executed and returned with a recording of thermal imagery showing more electrical usage in the garage than in the living areas of the Crofton residence.

On January 15, 2009, Investigator Kelley obtained a second warrant to conduct thermal imagery. On its face, the warrant was for McIntyre's Crofton residence. Investigator Kelley testified that his purpose was to obtain representative comparisons of readings from other residences in the area. Investigator Kelley also testified that, although this information was not included in the application and affidavit that mirrored the January 14, 2009, application and affidavit, he told the issuing judge about his wish to obtain information from nearby homes for comparison purposes. This warrant was executed and returned with a recording of thermal imagery showing that in the neighboring residences the usage was higher in the living areas as opposed to the accompanying garages.

Based on the information set out in the thermal imagery search warrant affidavits and the thermal imagery obtained as a result of the warrants, on January 16, 2009, a search warrant was issued for a search of McIntyre's Crofton residence. In executing the warrant, a marijuana growing operation was seized.

A search warrant was also issued for McIntyre's Fremont residence on January 16, 2009. No evidence was found during execution of the warrant, and this warrant is not a subject of these proceedings.

Judge Thalken denied the Defendants' request for a *Franks* hearing. Also, he concluded that the Defendants do not have standing to contest the thermal imaging of the neighboring residences near McIntyre's Crofton home and, moreover, that the Defendant, Kathi McIntyre ("Ms. McIntyre"), lacks standing to challenge the subpoena for McIntyre's electric usage records and the thermal imaging warrants. Assuming, however, for the sake of argument, that the Defendants have standing to contest the searches of those residences, Judge Thalken concluded: a warrant was not needed to obtain McIntyre's utility use records; even if Investigator Sears violated state law in obtaining McIntyre's utility use records, no Fourth Amendment violation occurred; the search warrant affidavits submitted in support of the applications for warrants for the thermal imaging

---

**1.** This apparent spike, however, was later shown to be inaccurate, as the reported number actually reflected usage for November and December 2008.

and McIntyre's Crofton residence contained sufficient probable cause to support their issuance; and, even assuming that probable cause did not exist with respect to the thermal imaging or Crofton residence, the good faith exception set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applied. Therefore, Judge Thalken recommends that the Defendants' motions to suppress be denied.

## I. Franks Hearing

A district court may set aside any part of the magistrate judge's order, on a non-dispositive matter, shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Defendants allege that the applications for the search warrant of David McIntyre's Crofton cabin and the two warrants for thermal imagery searches of the cabin included false statements made intentionally or with a reckless disregard for the truth. Specifically, Defendants refer to a statement that the affiant learned that the kilowatt usage for the property was unusually high for November of 2008.[2] Defendants also argue that information regarding investigators' desire to obtain thermal images of neighboring properties for comparison with similar information already obtained from the cabin was orally stated to the issuing judge but omitted from the affidavit. Defendants also argue that the statements in the affidavits regarding an allergic reaction experienced by Investigator Sears of the Nebraska State Patrol upon smelling raw marijuana inside David McIntyre's Crofton cabin and outside his garage on the Crofton property are false, because no evidence was presented indicating that Investigator Sears suffers from a diagnosed allergy. Finally, Defendants

argue that the shingle hanging down and the hose protruding from the garage were not in plain view.

■■■ To obtain a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), Defendants must: 1) make a "substantial preliminary showing" that the affidavit contains false information deliberately or in reckless disregard for the truth; and 2) the information is necessary for a finding of probable cause. *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir.2009), *cert. denied*, — U.S. —, 130 S.Ct. 771, — L.Ed.2d — (2009). The same analysis applies to omissions of fact. The defendant must show: (1) facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir.2001); *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir.1995). This "substantial preliminary showing" is "not lightly met." *United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir.1995). If the affidavit is sufficient to establish probable cause with the false material removed or with the omitted material included, no evidentiary hearing is required. *United States v. Crook*, 936 F.2d 1012, 1014 (8th Cir.1991). Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

### 1. False Information

■■■ If the allegedly false information is excluded from the affidavits, the affidavits describe the following: the presence of a

---

**2.** The number attributed to November of 2008 actually included the usage for November and December of 2008.

pen tube (indicative of controlled substance use) in McIntyre's vehicle; the smell of raw marijuana inside the cabin; McIntyre's nervousness and shaking hands while talking with Investigator Sears; events surrounding the temporary presence of a vehicle parked backed up to the garage at 7:00 a.m.; the smell of raw marijuana outside the garage; McIntyre's prior controlled substance arrests; and information that in the officer's experiences, garages are used for marijuana manufacturing. This remaining information clearly supports a finding of probable cause.

## 2. Omissions

Defendants argue that information regarding investigators' desire to obtain thermal images of neighboring properties for comparison with similar information obtained from the cabin, as well as general information regarding thermal imaging, was orally stated to the issuing judge but omitted from the affidavit. However, Defendants failed to show that the information in question was omitted "with the intent to make, or in reckless disregard of whether [it] make[s], the affidavit misleading." Defendants also have not shown that if the information were added to the affidavit, it could not support a finding of probable cause.

## 3. Leon Good Faith Standard

Defendants argue that investigators relied on numerous pieces of extrinsic evidence in executing the warrant. For example, Defendants argue that the officers relied on "conjecture, hunch, unsubstantiated details, and the allegations of unverified allergies." (Filing No. 76, ¶ 5; Filing No. 78, ¶ 5.) While the Court finds a *Leon* analysis unnecessary, if probable cause did not support the issuance of the search warrant the Court concludes that officers acted in good faith reliance on the search warrant and, therefore, the *Leon* good faith exception to the exclusionary rule

would apply. *United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## 4. Conclusion

For the reasons discussed, a *Franks* hearing need not be held. Judge Thalken's order denying the *Franks* hearing and the Defendants' motion for reconsideration of that order are not clearly erroneous or contrary to law, and they are affirmed.

## II. Findings and Recommendation

The district court must review de novo any part of the magistrate judge's findings and recommendation to which a party objects, and the court may accept, reject, or modify the findings or recommendation. 28 U.S.C. § 636(b)(1).

## A. Standing

### 1. Both Defendants—Standing to Neighboring Crofton Residences

Neither Defendant objected to Judge Thalken's conclusion that they lack standing and an expectation of privacy in the residences neighboring McIntyre's Crofton residence. This standing issue relates to the thermal imaging done on neighboring houses for comparison purposes as a result of the second thermal imaging warrant. No evidence was presented with respect to this standing issue. The Court concludes that the Defendants lack standing to those residences. Nevertheless, the related issues will be addressed for the sake of argument.

### 2. Kathi McIntyre—Standing to the Crofton Cabin

 Ms. McIntyre argues that Judge Thalken erred in concluding that she did not have standing to the cabin. She did not allege in her motion or supporting brief that she had standing to the Crofton

residence, and she offered no evidence regarding standing at the evidentiary hearing. She argues that she pays bills for the cabin, stays there, and is married to Mr. McIntyre. She argues that from "discovery provided" it is clear they the two defendants have joint accounts. The power company records show David McIntyre as the sole subscriber. She has failed to meet her burden of establishing standing. *United States v. Perry,* 548 F.3d 688, 691 (8th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 2174, 173 L.Ed.2d 1168 (2009). Therefore, the Court concludes that Ms. McIntyre lacks standing to contest any searches of the Crofton residence. Nevertheless, the issues raised by her will be considered for the sake of argument.

### B. Subpoena

The Defendants argue that Judge Thalken erred in concluding that the subpoena used to acquire electrical power records did not violate the Defendants' Fourth Amendment rights and that a warrant was not necessary to obtain McIntyre's electrical use records. Judge Thalken concluded that because David McIntyre had conveyed his utility use information to the power company neither he, nor anyone else, had a reasonable expectation of privacy in that information. He also concluded that Neb.Rev.Stat. 70–101 (Reissue 2003) (restricting the use of utility service subscriber identifying information) neither applies to utility usage reports nor criminal drug investigations and therefore does not supply an expectation of privacy. Judge Thalken concluded that the county attorney had authority under Neb.Rev.Stat. § 86–2,112 (Reissue 2008)[3] to obtain the information by subpoena.

■ This Court has carefully considered the parties' arguments and concluded that

because McIntyre provided his utility use information to the power company, a third party, he has no reasonable expectation of privacy in that information. *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (quoting *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)); *United States v. Hamilton,* 434 F.Supp.2d 974, 979 (D.Or.2006) (a defendant had no expectation of privacy in utility records). The Defendants have cited no authority directly supporting their position. Mr. McIntyre's argument relying on *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), is misplaced, because *Kyllo* regards a warrantless thermal imaging search. Their argument that § 70–101 provides an expectation of privacy by restricting the dissemination to the county attorney of utility subscriber information is deficient because that statute relates only to identifying information and not to usage records. It follows that the parties' Fourth Amendment rights were not violated by the use of the subpoena. Therefore, a search warrant was not necessary to obtain the records.

The Defendants then argue that the subpoena was deficient because it was not served in compliance with Neb.Rev.Stat. § 25–1273 (2006 Cum. Supp.) (regarding discovery in civil cases) or Nebraska rule of civil discovery 34A. Defendants argued in their original briefs supporting their motions that the statute and rule governing civil discovery have no application to the contemplated criminal case, and they also argue that technically the subpoena did not fulfill necessary requirements. In his Findings and Recommendation, Judge Thalken did not address those issues substantively, stating that "[r]egardless of

---

**3.** The Findings and Recommendation cites to "Neb.Rev.Stat. § 86–2,112." (Filing No. 75, at 8.)

these issues," the county attorney had the necessary subpoena authority under § 86–2,112. Neither party objected to the use of § 86–2,112 nor reargued issues relating to § 25–1273 or Nebraska civil discovery rule 34A. Therefore, those issues are deemed waived by both parties. *See* NECrimR 59.2(a). Moreover, this Court notes that evidence obtained through subpoenas issued under civil discovery statutes has been used in at least one other criminal case. *See State v. McKinney*, 273 Neb. 346, 730 N.W.2d 74, 88–89 (2007) (DNA did not fit within the categories of discoverable items listed in Neb.Rev.Stat. § 25–1224 (Reissue 1995) (civil discovery) only because it was not a "book, writing or other thing").

For the reasons stated, the parties' objections relating to the subpoena are denied.

### C. Probable Cause

#### 1. Investigator Sears; Allergic Reaction

Both Defendants argue that Judge Thalken erred in finding that Investigator Sears had an allergic reaction to the smell of raw marijuana inside McIntyre's Fremont residence and near the garage on McIntyre's Crofton property. Investigator Sears described his symptoms, yet he acknowledged that he had not had a medical diagnosis of an allergy to raw marijuana. The objection relates to the issue of probable cause, as Investigator Sears's "allergic" reactions were described in all of the search warrant affidavits.

■ The objection is denied. The phrase "allergic reaction" is often used generally to describe reactions of the type testified to by Investigator Sears. In the search warrant affidavits, the use of the word "allergic" is accompanied by a description of Investigator Sears's symptoms. Even if the words "allergic" and "allergic reaction" were stricken from the

affidavit, the affidavit would reflect that when Investigator Sears smelled raw marijuana his throat tightened, his ears and head "plugged up," and a headache followed. Therefore, a finding of fact that Investigator Sears had an allergic reaction is immaterial to the probable cause determination.

### D. Execution of Search Warrants

Defendants argue that the thermal images could only have been obtained by Investigator Kelley trespassing on the McIntyre property. However, Investigator Kelley testified that he took the images from the street as he was not permitted to enter onto the property. No contrary evidence has been received. (Tr. at 80–81.) The objections are denied.

### E. Exceeding Scope of Second Thermal Imaging Warrant

The Defendants argue that the second thermal imaging warrant, the only warrant sought to obtain information from neighboring residences, did not reflect on its face that information would be obtained regarding neighboring residences. Therefore, they argue Investigator Kelley's actions in obtaining that information exceeded the scope of the warrant. However, given Investigator Kelley's additional oral statement to the issuing judge, the execution of the warrant did not exceed its scope.

### F. Leon

Even assuming for the sake of argument that one or more Fourth Amendment violations occurred, the Court concludes that the good faith exception set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies.

### G. Wong Sun

Because the Court has found no Fourth Amendment violations, the fruit-of-the-poisonous tree analysis under *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), does not apply. Specifically, the evidence discovered during the execution of the search of the Crofton residence was not a fruit of alleged Fourth Amendment violations regarding the thermal image warrants or the execution of those warrants.

### H. Conclusion

For the reasons discussed, the Court affirms Judge Thalken's Findings and Recommendation.

For the reasons discussed,

IT IS ORDERED:

1. The Defendants' objections to the Magistrate Judge's order and findings and recommendation (Filing Nos. 76, 78) are denied;

2. The Magistrate Judge's oral orders (Filing Nos. 61, 62) denying the Defendants' motion for reconsideration (Filing No. 59) of the Magistrate Judge's previous order (Filing No. 57) denying a *Franks* hearing are affirmed;

3. The Magistrate Judge's findings and recommendation (Filing No. 75) are adopted in their entirety;

4. The motions to suppress filed by the Defendant, David McIntyre, (Filing Nos. 15, 34) are denied; and

5. The motion to suppress filed by the Defendant, Kathi McIntyre, (Filing No. 56) is denied.

## FINDINGS AND RECOMMENDATION

THOMAS D. THALKEN, United States Magistrate Judge.

This matter is before the court on the motions to suppress filed by defendants David McIntyre (Filing Nos. 15 and 34) and Kathi McIntyre (Filing No. 56). The McIntyres are charged in a Superseding Indictment (Filing No. 37) with a conspiracy to manufacture marijuana (Count I) in violation of 21 U.S.C. § 846, the manufacture of marijuana (Count II) in violation of 21 U.S.C. § 841(a)(1), and a forfeiture count (Count III) pursuant to 21 U.S.C. § 853. The McIntyres seek to suppress evidence obtained as a result of a county attorney subpoena (Filing No. 34) and evidence seized in a search of the McIntyres' residence on January 16, 2009, as well as evidence obtained pursuant to thermal imagery search warrants of the McIntyres' residence on January 14 and 15, 2009 (Filing Nos. 15 and 56). Previously, the court denied the McIntyres' motions (Filing Nos. 15 and 56) for a *Franks* hearing (Filing No. 57) and the motion for reconsideration (Filing No. 59; Filing No. 62—Text Minute Entry).

The court held a hearing on the motions on September 10, 2009. David McIntyre was present for the hearing along with his counsel, James K. McGough, and Kathi McIntyre was present with her counsel, Assistant Federal Public Defender Jessica P. Douglas. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. During the hearing, the court heard the testimony of Investigators Jason Sears (Investigator Sears) and Douglas Kelley (Investigator Kelley) of the Nebraska State Patrol (NSP), and Daniel S. Leise (Mr. Leise). The court received into evidence numerous exhibits. Among the exhibits are Exhibits 1 through 31 of which the court took judicial notice as they were attached to Filing No. 27. The court further received in evidence thermal imagery DVDs (Exhibits 4A and 7A). Also, additional photographs of the residence and garage were received into evidence (Exhibits 32–37). The parties requested to submit post-hearing briefs. The transcript (TR.) was filed on September 25, 2009

(Filing No. 69). Post-hearing briefing was completed on October 19, 2009.

## FINDINGS OF FACT

On December 8, 2008, Investigator Sears was investigating a missing person case and contacted David McIntyre because a person of interest in the missing person case had sold a trailer to David McIntyre and the trailer could have been used to dispose of a vehicle involved in the missing person case (TR. 17; Exhibit 2 ¶ 2). Investigator Sears and NSP Trooper Lueders encountered David McIntyre in the driveway outside McIntyre's residence in Dodge County at 735 North Irving Street, Fremont, Nebraska (TR. 24; Exhibit 2–¶ 2). Investigator Sears engaged David McIntyre in conversation about the trailer and McIntyre invited the officers into the residence to look for the title to the trailer (TR. 25; Exhibit 2–¶ 2). As Investigator Sears walked by the vehicle parked in the driveway, Investigator Sears noted a pen tube in the ash tray (TR. 25). Investigator Sears described the pen tube as a "tooter" used to ingest controlled substances (TR. 25; Exhibit 2–¶ 2). While inside the residence, Investigator Sears smelled a strong odor of raw marijuana and began to have an allergic reaction to the odor (TR. 28; Exhibit 2–¶ 2). Investigator Sears noted David McIntyre was notably nervous when talking about the trailer and McIntyre's hands were shaking when handing the trailer title papers to Investigator Sears for examination (Exhibit 2–¶ 2). David McIntyre told Investigator Sears the trailer was currently loaded with wood and located at David McIntyre's cabin in Crofton, Nebraska, or at Mark Narke's residence (Exhibit 2–¶ 2). David McIntyre told Investigator Sears he (McIntyre) only visited the cabin one or two weekends during the month (Exhibit 2–¶ 2). David McIntyre placed a telephone call to a person named Mark Narke and Investigator Sears overheard the con-versation since the volume on the telephone was turned up very loud (Exhibit 2–¶ 2). David McIntyre told Narke to get the trailer to Narke's residence in Santee, Nebraska, unload the wood, and have the trailer at Narke's residence before the NSP Investigators would arrive (Exhibit 2–¶ 2).

On December 8, 2008, Investigator Sears and Trooper Lueders drove to Santee, Nebraska, and met with Narke at his residence (Exhibit 2–¶ 3). There the officers inspected the trailer which was parked by a shed (Exhibit 2–¶ 3). The trailer was empty and Narke stated he was unaware of anything being loaded on the trailer (Exhibit 2–¶ 3). After being allowed to inspect the trailer and buildings on the property, the officers found nothing unusual (Exhibit 2–¶ 3).

At approximately 7 a.m. on January 9, 2009, Investigator Sears and Cedar County Sheriff Koranda drove past McIntyre's house, 26 Circle Drive, Grand View Estates, Kohles Edition, in Crofton, Knox County, Nebraska (Exhibit 2–¶ 4). The officers were investigating whether there was a garage at the residence and if such a garage could hold a pickup which was an object in the missing person investigation (TR. 30). The officers observed a gray Oldsmobile, with a county 5 license plate, backed up to the garage door (Exhibit 2–¶ 4). At one o'clock in the afternoon, the officers returned to McIntyre's residence in Crofton and noted the gray Oldsmobile was gone (Exhibit 5–¶ 4). The officers parked in the driveway and got out their car (Exhibit 2–¶ 4). Investigator Sears noted a piece of trim hanging down in an unusual fashion, the wood siding near the garage door was rotted away, a small hose was protruding from under the garage door, and a strong odor of raw marijuana (Exhibit 2–¶ 4). The odor of marijuana caused a similar allergic reaction in Inves-

tigator Sears as when he was at McIntyre's residence in Fremont (Exhibit 2–¶ 4; TR. 34–35). The officers observed a light and television on inside the house and quickly left the area (Exhibit 2–¶ 4; TR. 35).

Investigator Sears checked the Nebraska Criminal Justice System records and found that David McIntyre had been arrested for "Dangerous Drugs" in June of 1981, and in October 2003, he was arrested for a probation violation for possession of drugs and possession of narcotic equipment (Exhibit 2–¶ 6). Based upon the smell of raw marijuana coming from McIntyre's residence and his past drug charges, Investigator Sears decided to obtain McIntyre's electricity usage records (TR. 50).

Investigator Sears called the Cedar–Knox Public Power District and spoke with Daniel Leise, the General Manager, and asked for the electricity usage records for 26 Circle Drive in Crofton, Nebraska (TR. 49; 87). Mr. Leise told Investigator Sears a subpoena was needed to obtain the records (TR. 49; 87). Investigator Kelley contacted the Knox County Attorney and obtained a County Attorney's subpoena for electricity usage records from the Cedar Knox Public Power District for McIntyre's residence at 26 Circle Drive in Crofton (TR. 50; Exhibit 2–¶ 5; Exhibit 1). Investigator Sears took the subpoena to Mr. Leise at Cedar–Knox Public Power District in Hartington, Nebraska, and provided him with a copy (TR. 20; 51). Mr. Leise provided Investigator Sears with a single sheet of electrical usage for the past three years for 26 Circle Drive in Crofton (TR. 20; 51; 89). The electrical usage document provided showed a huge spike in electrical usage for the November 2008 period (Exhibit 2—last page). Mr. Leise told Investigator Sears the usage seemed to be higher than other homes in the area (TR. 20–21). Mr. Leise told Investigator Sears the single sheet of records were

those that went back to the implementation of the new computer system and if further records were needed, Mr. Leise could get them by hand (TR. 21–22). Investigator Sears made no further requests (TR. 52; 89).

On January 14, 2009, Investigator Kelley, citing Investigator Sears's allergic reaction to the smell of raw marijuana at both of McIntyre's residences, McIntyre's drug arrest history, the electrical usage record, the "tooter" observed in McIntyre's truck, and the utility of thermal imagery to indicate the presence of marijuana grow operations, applied for and submitted an affidavit for a thermal imaging warrant for McIntyre's residence at 26 Circle Drive, Crofton, Nebraska (Exhibit 2). A Knox County Judge, Judge Krepela, issued the thermal imaging warrant on January 14, 2009 (Exhibit 3). That evening, Investigator Kelley executed the warrant and made a return to the court together with a recording of thermal imagery (Exhibits 4 and 4A).

On January 15, 2009, Investigator Kelley sought and obtained a second warrant to conduct thermal imagery of 26 Circle Drive in Crofton (Exhibits 5 and 6). Investigator Kelley testified he did so to get representative comparisons of similar residences in the area and explained his reasons to Judge Krepela but did not include such matters in the application and affidavit, which were identical to the application and affidavit from January 14th (TR. 77–78; Exhibit 5). Investigator Kelley executed the warrant on the evening of January 15, 2009, and made a return to the court together with a copy of the thermal imagery (Exhibits 7 and 7a).

Based upon the information previously set forth in the affidavits for the thermal imagery warrants and the results of the thermal imagery of 26 Circle Drive in Crofton, Investigator Kelley applied for a

search warrant on January 16, 2009, for the premises of 26 Circle Drive in Crofton (TR. 78, Exhibit 11). The warrant was issued on January 16, 2009 (Exhibit 12). The warrant was executed and a marijuana grow operation was discovered and seized at the premises (TR. 79; Exhibit 13 p. 4).

On January 16, 2009, NSP Investigator Mark Plowman signed an affidavit and application for a search warrant for McIntyre's residence at 735 North Irving in Fremont, Nebraska, citing the facts previously stated in the thermal imagery affidavits and setting forth the results of the search of McIntyre's residence in Crofton (Exhibit 13). The search warrant was issued as requested (Exhibit 14).

## LEGAL ANALYSIS

Both McIntyre defendants seek to suppress the county attorney subpoena that was used to obtain usage records from the Cedar–Knox Public Power District and argue any evidence obtained following the subpoena should be suppressed pursuant to *Wong Sun* as fruit from the poisonous tree. Additionally, both McIntyre defendants argue officers lacked probable cause to obtain the thermal imagery warrants for the Crofton location, then exceeded the scope of the warrants by conducting such searches on two dates, of multiple residences, and of the back and sides of the Crofton residence. Similarly, the defendants contend any evidence obtained following the thermal imagery warrants should be suppressed pursuant to *Wong Sun* as fruit from the poisonous tree

### A. Standing

As an initial matter, evidence in the record fails to support standing in several respects. To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.

*Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir.2006). The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see also *Smith v. Maryland*, 442 U.S. 735, 740–41, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *United States v. Barragan*, 379 F.3d 524, 529–30 (8th Cir.2004) (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994)).

The Eighth Circuit has recognized that:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir.1994) (internal citations omitted). "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Barragan*, 379 F.3d at 529. Therefore, the court "must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256. The Eighth Circuit has explained:

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the proper-

ty or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *Id.*

First, the defendants argue the officers lacked authority to conduct thermal imaging of residences near the Crofton location for comparison purposes. The defendants provide the court no evidence they have standing, or any expectation of privacy in those residences. Second, the evidence in the record lacks any support for Kathi McIntyre's challenge to either the subpoena for Cedar–Knox Public Power District usage records or the thermal imaging warrants. As Kathi McIntyre notes, she was not the subject of the investigation. Furthermore, her name does not appear on the Cedar–Knox Public Power District records, nor does she make a claim of ownership in the Crofton location. Accordingly, Kathi McIntyre appears to lack standing, or any expectation of privacy with regard to either the subpoena at issue or the warrants related to the Crofton location. In any event, the court will evaluate Kathi McIntyre's arguments along with David McIntyre's arguments below.

## B. Cedar–Knox Public Power District Subpoena

The defendants contend use of the subpoena at issue to obtain Cedar–Knox Public Power District usage records violated their Fourth Amendment rights. The defendants argue a search warrant was required to obtain the usage records. Alternatively, the defendants argue the subpoena used was flawed requiring suppression.

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unrea-sonable searches and seizures." *U.S. Const. amend. IV;* see *United States v. Ameling,* 328 F.3d 443, 447 (8th Cir.2003) (Fourth Amendment applies to the states through the Fourteenth Amendment.). "[T]he Fourth Amendment does not require the [officers] 'always be correct, but that they always be reasonable.' " *United States v. Hudspeth,* 518 F.3d 954, 958 (8th Cir.2008) (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Nonetheless,

> the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (regarding bank records); see also *United States v. Hamilton,* 434 F.Supp.2d 974, 979 (D.Or.2006) (regarding employment and power utilities records). The *Miller* and *Hamilton* courts reasoned an individual has no legitimate expectation of privacy in information voluntarily exposed during the ordinary course of business to a business and its employees. See *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *Hamilton,* 434 F.Supp.2d at 979: see also *United States v. Moore,* 943 F.2d 884, 888 (8th Cir.1991) (warrantless search of package constitutionally valid where officer's search did not

exceed scope of the initial private party search).

David McIntyre conveyed his utility use information to a third party recipient, Cedar–Knox Public Power District. Because David McIntyre had already revealed the information to a third party, neither he nor anyone else had a legitimate expectation of privacy in the information. Accordingly, the information itself here, business records, is of a different nature than the information about internal temperatures suppressed in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (holding warrantless use of thermal imaging device violated Fourth Amendment). Moreover, contrary to the defendants' assertions, Neb.Rev.Stat. § 70–101 does not supply the requisite expectation of privacy. Under Neb.Rev.Stat. § 70–101, certain information, not sought or supplied here, shall be furnished by a utility company to the county attorney upon request for limited use, such as collecting child support. The plain text of Neb.Rev. Stat. § 70–101 reveals the statutory section does not apply to utility usage information or criminal drug investigations. For these reasons, Investigator Sears did not need a warrant supported by probable cause to acquire David McIntyre's utility use records.

Absent the necessity of a warrant, the defendants argue the subpoena used to obtain the utility use records was deficient. Specifically, the subpoena issued by the Knox County Attorney contained a partial criminal case number and caption for David McIntyre although no criminal case had been opened; and referenced a civil subpoena statute, Neb.Rev. Stat. § 25–1273, and civil discovery Rule 34A, as authority, but was not served in compliance with those provisions. Regardless of these issues, the county attorney has subpoena power, under the circumstances present here, pursuant to Neb.Rev.Stat. § 86–2,112. Specifically, such statute provides that "any county attorney may ... require the production of records ... which constitute or contain evidence relevant or material to the investigation or enforcement of the laws of this state when it reasonably appears that such action is necessary and proper." Neb.Rev.Stat. § 86–2,112. The court finds the officer's investigation into David McIntyre's utility use records, even if lacking probable cause at that time, fell within the purview of the subpoena statute's grant of authority. Accordingly, assuming Investigator Sears violated state law when obtaining the records, the court concludes no Fourth Amendment violation occurred. See *United States v. Cote*, 569 F.3d 391, 393 (8th Cir.2009) (noting "[e]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because state law was violated.").

## C. Sufficiency of the Affidavit

The defendants argue any information obtained based on the search warrants at issue in this case should be suppressed. Generally, the defendants assert the thermal imaging warrants and residence search warrant lacked probable cause. Additionally, the defendants assert the thermal imaging warrants were executed outside the scope of their authority. Independently of the validity of the subpoena, the defendants contend the thermal imaging search warrants lacked probable cause because the subpoenaed information was not reliable, i.e., an error existed in the information and the information was without corroboration. Further, the affidavits failed to contain information comparing David McIntyre's utility usage to "normal" usage and whether David McIntyre's utility usage was consistent with illegal or innocent conduct.

■ An affidavit for a search warrant must contain probable cause of four ingre-

dients: time, crime, objects, and place. 2 *Wayne R. LaFave, Search & Seizure* § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. *See id.*; *United States v. Jeanetta,* 533 F.3d 651, 654 (8th Cir.2008). "Probable cause has been shown if the warrant application and affidavit describe circumstances showing 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Robinson,* 536 F.3d 874, 877 (8th Cir.2008) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. 2317). The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed." [*Gates,* 462 U.S. at 238, 103 S.Ct. 2317]. When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of

the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell,* 864 F.2d 71, 74 (8th Cir.1988) (citing *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). "Deference is accorded an issuing magistrate's probable cause determination ..." *United States v. Brown,* 584 F.2d 252, 256 (8th Cir.1978).

*United States v. Gladney,* 48 F.3d 309, 312 (8th Cir.1995) (emphasis added).

Based on the four corners of the affidavits before the court, there remained a fair probability that contraband or evidence of a crime will be found at the Crofton location. See, e.g., *United States v. Charles,* 290 F.Supp.2d 610, 618 (D.V.I. 1999) (noting plain smell of marijuana supplied the probable cause for residence search warrant). In addition to, or despite, the thermal imaging and subpoenaed records, Investigator Sears observed David McIntyre's unusual and extremely nervous behavior on December 8, 2008, a pen tube that may have been used to ingest controlled substances in the ash tray of a vehicle in McIntyre's driveway, and a strong odor of raw marijuana at McIntyre's Fremont residence. Additionally, on January 9, 2009, Investigator Sears again smelled a strong odor of raw marijuana outside the Crofton location garage and a small hose coming out from under of the garage door. On January 13, 2008, Investigator Kelley discovered information about David McIntyre's criminal history which included possession of drugs and narcotic equipment. On January 16, 2009, Investigator Kelley obtained the search warrant, which was executed shortly thereafter.

Furthermore, the court has found above the subpoenaed information should not be excluded from the probable cause analysis. Similarly, the court does not find the actions of the searching officers to be in flagrant disregard of the scope of the thermal imaging warrants. See *Waller v. Georgia*, 467 U.S. 39, 43 n. 3, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *United States v. Beck*, 122 F.3d 676, 679–80 (8th Cir. 1997). Accordingly, such information should not be excluded from the probable cause analysis. Given all the circumstances set forth in the affidavit there was a fair probability that contraband or evidence of a crime will be found at the Crofton location. Thus, the defendants' motions to suppress should be denied.

## D. Good Faith

■ Even assuming *arguendo*, that probable cause was lacking in sufficiency, the *Leon* good faith exception would allow the admissibility of the evidence seized. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court carved out an exception to the exclusionary rule by determining that evidence which would otherwise be inadmissible because the warrant was invalid would nonetheless be admissible if the evidence was obtained by law enforcement officers who were acting in reasonable good faith reliance upon the search warrant issued by a neutral and detached magistrate. This good faith exception is equally applicable to warrants that violate the particularity requirement of the Fourth Amendment. *Massachusetts v. Sheppard*, 468 U.S. 981, 988, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The Supreme Court found that reliance on an invalid search warrant would not be reasonable if: (1) the affidavit included information the officer knew was false or would have known to be false except for the officer's reckless disregard for the truth and such information misled the issuing magistrate; (2) the issuing magistrate abandoned a neutral and detached role; (3) the warrant was based on an affidavit with so few indicia of probable cause that an objective belief in its validity would be unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not rely upon its validity. *Leon*, 468 U.S. at 923, 104 S.Ct. 3405; see *United States v. Perry*, 531 F.3d 662, 665 (8th Cir.2008). None of those exceptions apply in this case. Accordingly, the motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

1. David McIntyre's motion to suppress (Filing Nos. 15 and 34) be denied; and

2. Kathi McIntyre's motion to suppress (Filing No. 56) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 11th day of December, 2009.